**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**JEFFREY J. GRIMES,**

      **Plaintiff,**

      v.                                                                                    **CASE NO. 23-3194-JWL**

**(FNU) HUDSON, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff is incarcerated at USP-Leavenworth in Leavenworth, Kansas ("USPL"). The Court granted Plaintiff leave to proceed *in forma pauperis*. On September 21, 2023, the Court entered a Memorandum and Order (Doc. 8) ("M&O") directing the officials responsible for the operation of the USPL to file a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 8, at 6.) The *Martinez* Report (the "Report") has now been filed (Doc. 11, with attachments), and Plaintiff has filed an Amended Complaint (Doc. 15). The Court's screening standards are set forth in detail in the M&O.

**I. Plaintiff's Allegations in the Complaint**

Plaintiff claims "medical misconduct" based on his medical care at USPL. (Doc. 3, at 2.) Plaintiff alleges that he suffers from a badly torn medial cruciate ligament in his right knee, a history of colon cancer, a hernia, and COPD. (Doc. 1, at 1.) When he arrived at USPL on June 7, 2023, he had a medical restriction for a wheelchair due to his difficulty walking. *Id*. Prior to his arrival at USPL, he apparently had been recommended for surgery on his knee. (Doc. 1, at 1; Doc. 3 at 2.) Plaintiff claims that he saw a physical therapist (FNU Winter) on July 7, 2023, who said

1

he was leaving Plaintiff in a wheelchair and recommending his transfer to a medical facility. *Id.*; Doc. 3, at 3. Dr. Jason Clark then removed the wheelchair and ordered that Plaintiff use a walker. *Id.* at 2. Plaintiff states that he has to hop on one leg while using the walker and frequently falls. *Id.*; Doc. 3, at 2,3. He asserts that he was not able to get to the chow hall, the shower, the yard, or the law library for six weeks. *Id.*; Doc. 3, at 2. He claims that since August 29, 2023, he again has not had access to food, shower, yard, or law library. (Doc. 3, at 2.) Plaintiff further alleges that the hopping has caused the hernia on his navel to get larger and more painful. (Doc. 1, at 2.) Plaintiff fears the hopping will cause the hernia to explode and kill him. (Doc. 3, at 2.)

## II. The *Martinez* Report

The Martinez Report states that Plaintiff has had a right medial meniscus tear since at least 2017, when the tear was diagnosed after an MRI. (Doc. 11-1, at 5.) Since the diagnosis, Plaintiff has refused reparative surgery three times (in 2017, 2018, and 2021) and been non-compliant with treatment plans. *Id.* at 6. Plaintiff had been using a wheelchair since 2020. *Id.*

According to Dr. Jason Clark, USPL Clinical Director, when Plaintiff arrived at USPL, he had slightly restricted range of motion in his right knee and diminished quad strength. *Id.* at 8. Dr. Clark felt it was important to make Plaintiff ambulate without a wheelchair while awaiting surgery to preserve leg function. However, Plaintiff did not appear motivated to walk, believing his use of a wheelchair would allow him to transfer to a medical center. *Id.*

The Report acknowledges that Plaintiff attended one physical therapy appointment with an outside specialist on July 7, 2023. The therapist was not able to check Plaintiff's range of motion because Plaintiff refused physical contact. The therapist recorded Plaintiff's reported pain levels and desire to transfer to a medical center but did not provide an opinion on the necessity of a medical transfer. *Id.* After the therapy appointment, Dr. Clark confiscated Plaintiff's wheelchair

and gave him a walker. *Id.* Immediately upon leaving Dr. Clark's office with the walker, Plaintiff fell in the hallway but suffered no injury. *Id.* Plaintiff continued to use the walker until August 11, 2023, when Dr. Clark agreed to allow him to use a wheelchair for long commutes. *Id*. at 9. Dr. Clark forbade Plaintiff from using the wheelchair on his housing unit to increase use of his right knee. On August 29, Dr. Clark again confiscated the wheelchair because Plaintiff made numerous attempts to take it into his housing unit and was observed attempting to dispose of his walker. *Id.* Since then, Plaintiff failed to attend two appointments for knee x-rays, refused physical therapy on August 31, has repeatedly been observed using an unauthorized wheelchair, and attempted to blackmail Dr. Clark. *Id*. at 9-10.

In Dr. Clark's medical opinion, a partial meniscal tear should not prevent Plaintiff from standing or bearing weight on that leg, and it is crucial for Plaintiff to attempt to walk to preserve leg function and prevent muscle atrophy. *Id*. at 8.

The Report further states that Plaintiff has not been diagnosed with colon cancer, and he has an umbilical hernia in non-urgent condition. *Id*. at 7, 12.

In addition, the *Martinez* Report asserts that Plaintiff has not exhausted his administrative remedies. *Id*. at 4-5. He has filed two remedy requests that relate to his claims here. He submitted a request on August 18, 2023, requesting transfer to a medical center with wheelchair access. The request was rejected due to formatting errors. Plaintiff appealed this response to the Regional Office on September 5, 2023. The Regional Office agreed with the facility-level rejection and instructed Plaintiff to fix the errors and resubmit his request at the facility level. Plaintiff has not done so.

3

**III. Amended Complaint**

The Amended Complaint (Doc. 15) names two defendants, Warden Hudson and Health Services Administrator Viscon. Plaintiff asserts that he has seen four orthopedic surgeons and has had MRIs showing the meniscus tear. Plaintiff does not mention the three times he was scheduled for surgery to repair the tear but refused. He focuses on his claim that Physical Therapist Winters told Plaintiff on July 7, 2023, that he was recommending transfer to a medical facility and that Plaintiff stay in a wheelchair until he had surgery on his knee. Plaintiff agrees that the wheelchair was removed that day but given back on August 18, 2023, to use for "chow and pill line," then removed again on September 29, 2023. Plaintiff confirms that that he went to physical therapy on July 7 but mentions no other visits. Plaintiff further alleges that Assistant Health Services Administrator Jones told him that he was not being transferred to a medical facility just because he thought he needed to be.

Plaintiff does not include allegations that he has been denied access to food, showers, yard, or the law library, or that he falls while using the walker.

As for the question of exhaustion of administrative remedies, Plaintiff asserts that it is "still in the process and has not been answered by Regional Office properly." Doc. 15, at 5.

**IV. DISCUSSION**

The *Martinez* Report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The Report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve

4

conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). After reviewing the Report and Plaintiff's Amended Complaint filed in response to the Report, the Court finds that the Amended Complaint should be dismissed for failure to exhaust administrative remedies and for failure to state a claim upon which relief may be granted under *Bivens*.

### A. Failure to Exhaust

An inmate is required by the Prison Litigation Reform Act to exhaust all available prison administrative remedies before filing a complaint in federal court. *See* 42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted). The exhaustion requirement allows the Bureau of Prisons ("BOP") "an opportunity to correct its own mistakes . . . before it is hauled into federal court" and it discourages "disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotations omitted). The exhaustion requirement is satisfied when the petitioner "us[es] all steps that the agency holds out." *Id.* at 90. The BOP has a four-part administrative remedy program, which is codified at 28 C.F.R. § 542. *See also* Program Statement 1330.18, *Administrative Remedy Program* (Doc. 11-5, at 2-17.) The purpose of the program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. *Id.* at 2-2.

The *Martinez* Report provides that Plaintiff has not exhausted his administrative remedies with respect to the subject matter of the claims he makes in his Amended Complaint. (Doc. 11-1, at 4-5.) At the time the Report was filed, Plaintiff had attempted to bring a grievance but was told

to resubmit it at the facility-level in the proper form. Plaintiff had not done so and acknowledges in his Amended Complaint that the administrative remedy process is not complete.

The Amended Complaint is therefore subject to dismissal without prejudice for failure to exhaust.

### B. Failure to State a Claim

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

Plaintiff must also satisfy the subjective prong. "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d

1197, 1204 (10th Cir. 1996)). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

Plaintiff's claim in the Amended Complaint comes down to a disagreement over the proper course of treatment. Plaintiff believes he needs a wheelchair and should be transferred to a medical facility. He alleges that at least one medical provider, a physical therapist, agrees with him. On the other hand, Dr. Clark believes Plaintiff needs to use and bear weight on his right leg rather than using a wheelchair to get around.

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983). Even a difference of opinion between two medical providers does not give rise to a constitutional right or sustain a claim under § 1983. *Coppinger*, 398 F.2d at 394.

The Amended Complaint fails to state a claim for violation of Plaintiff's constitutional rights.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to exhaust administrative remedies and for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated November 13, 2023, in Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE
